# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| **BONNIE J. RUEBER**<br>3600 Farmstead Dr.<br>Pickerington, Ohio 43147<br><br>   **Plaintiff,**<br><br>  vs.<br><br>**PILOT DOGS, INC.**<br>*c/o John J. Gray (Statutory Agent)*<br>625 W. Town Street<br>Columbus, Ohio 43215<br><br>and<br><br>**John J. Gray**<br>625 W. Town Street<br>Columbus, Ohio 43215<br><br>   **Defendants.** | Case No: **2:17-cv-822**<br><br>Judge:_____<br><br><br>Magistrate Judge:_____ |

---

## CIVIL COMPLAINT
### (Jury Demand endorsed herein)

---

Plaintiff Bonnie J. Ruener, by and through the below-named counsel, complaining of Defendants Pilot Dogs, Inc. and John J. Gray, alleges as follows:

## THE PARTIES

1. Plaintiff Bonnie J. Rueber ("Bonnie") is a natural person residing in Franklin County, Ohio.

2. Upon information and belief, Pilot Dogs, Inc. ("Pilot Dogs") is an Ohio corporation authorized to do business in the State of Ohio, and operates a facility in

Franklin County, Ohio, with a primary objective of training guide dogs for use by the blind.

3.      Throughout all relevant times described herein, Defendant John J. Gray ("Mr. Gray"), served as the Executive Director of Pilot Dogs.

## JURISDICTION AND VENUE

4.      As Count I of this Complaint is brought pursuant to the laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

5.      This Court has supplemental jurisdiction over Plaintiff's §4112.02 *et seq.* claim set forth in Count II of this Complaint pursuant to 28 U.S.C. § 1367.

6.      Venue is proper pursuant to 28 U.S.C. §1391 because the events forming the basis of this Complaint occurred at Defendant's Franklin County, Ohio facility.

## FACTS COMMON TO ALL COUNTS

7.      Bonnie was hired as an Apprentice Trainer in January 2004.  She worked in an apprentice role until being promoted to the position of Senior Trainer Instructor (hereinafter "Trainer") less than two years after commencing her employment.

8.      Although Bonnie witnessed discriminatory conduct directed at female staff possessing familial caregiver responsibilities, Bonnie did not have any children during the first ten and one-half (10.5) years of her employment; and therefore, was not herself subjected to any discriminatory hostility.  In fact, Bonnie thrived in her Instructor role and was quite content in this capacity for several years prior to having her first child. Unfortunately, this all changed upon her return to work from maternity leave following the birth of her first child in July 2014.

9.      Upon returning to work in September 2014 following maternity leave,

Bonnie began experiencing hostility directed from Mr. Gray ostensibly because he was unhappy that Bonnie now had familial caregiver responsibilities.

10.     This hostility emanating from Bonnie's new caregiver responsibilities was best represented by Mr. Gray's comment to Bonnie that, "**Everything is different, you're a mom now**.  We wanted to keep moving forward with you as team leader, but couldn't wait [for your return from pregnancy leave]."

11.     Upon returning from maternity leave Bonnie assumed a modified role whereby her time was equally split performing duties in a newly created "Assistant to the Executive Director" position along with her normal Trainer duties.  Bonnie had assumed the newly created Assistant to the Executive Director position while out on maternity leave, and had agreed to split her duties between this position and her normal Trainer role until Spring 2015 to mitigate the loss of training staff.  Nevertheless, Bonnie's Assistant to the Executive Director position was summarily eliminated in December, just three months after its creation.  As a result, Bonnie was returned exclusively to her Trainer role, but she was relieved of many of her former duties and privileges.

12.     Among the various duties and privileges in which Bonnie was deprived following her return from maternity leave was the opportunity to conduct regular presentations and appear at promotional events.  For instance, prior to her 2014 pregnancy leave, Bonnie twice represented the organization on ABC6 live morning television promoting the organization's charitable work.  She also appeared in several promotional videos and was even sent out-of-state to place a Pilot dog with its new sightless owner that was publicized as part of a local news telecast.  Although these

examples represent some of the more notable experiences, Bonnie indicates that presentations and demonstrations are frequently conducted, and prior to her pregnancy leave, Bonnie was regularly assigned to attend, participate, and/or provide demonstrations.  Following her return from leave, she has rarely been assigned these privileged assignments, and on the extremely rare occasion that she is selected, it is only as a last resort.

13.    In addition to the aforementioned deprivation of privileged assignments, Bonnie has also been deprived of the opportunity to train apprentices, a task that she regularly performed prior to her 2014 pregnancy leave.  The organization now goes out of its way to prevent Bonnie from participating in training or assisting apprentices, and this is reflected in its regular assignment of two apprentices to a single Trainer rather than assigning anyone to Bonnie.

14.    As further evidence that Bonnie became a target since the birth of her first child, prior to her pregnancy leave in 2014, she was always selected to participate in the organization's annual tailgate fundraiser event, but in the three annual events following her return from leave, Bonnie was not selected even once.

15.    Despite working nine months during the 2014 calendar year, Bonnie was the only staff member not to receive a year-end performance review.  Soon thereafter (in early 2015), Mr. Gray admonished Bonnie for alleged poor performance since her return from pregnancy leave.  When, however, Bonnie pressed Mr. Gray for specific examples in support of his allegations, he were unable to provide any verifiable explanations.

16.     By August 2015, the work environment had become so hostile that Bonnie reached out to the Pilot Dogs Board of Directors' President to voice her objections to her discriminatory treatment upon returning from maternity leave.  Unfortunately, the Board was unable to facilitate any ameliorative relief from the hostile treatment.

17.     In December 2015, Bonnie was passed over for a promotion that was awarded to a male colleague.

18.     In addition to being passed over for the aforementioned December 2015 promotion, Mr. Gray refused to attend Bonnie's 2015 year-end performance review because he claimed to be too busy.  Yet, Mr. Gray managed to find time to attend all other training staff members' annual reviews.  Furthermore, and with no explanation provided, Bonnie's merit-based incentive was reduced by $200 during her review, purportedly at the directive of Mr. Gray.

19.      After becoming pregnant a second time in the latter part of 2015 and making plans to go out on maternity leave in May 2016, Bonnie learned from a pair of supervisors that Mr. Gray was searching for a reason to terminate her employment while she was off on leave.  As an example, Mr. Gray misapplied the time off policy specifically to force Bonnie to use accrued paid vacation while she was out on pregnancy leave in order to ensure that she had no paid leave remaining when she returned from leave.  This misapplication of policy was affirmed to be in error by Director of Client Services, Christine Williams.

20.     Despite Mr. Gray's best efforts, he was unable to find any justification for discharging Bonnie while she was out on pregnancy leave during 2016, but the hostility continued upon her return from leave in the latter half of 2016.  For example, Mr. Gray

rescinded Bonnie's company credit card privileges but permitted another male staff member to retain his company credit card.

21.     Bonnie's merit-based incentive was again reduced (by $400) without explanation as part of her December 2016 performance review.

22.     Following the December 2016 merit-based incentive reduction, Bonnie attempted to seek redress to the hostility by filing a charge with the Equal Employment Opportunity Commission ("EEOC").

23.     The EEOC charge filing did nothing to deter the hostility, and on or about February 3, 2017, all Trainers except Bonnie were asked to participate in a meeting to update training materials.

24.      In fact, Bonnie has been deprived of almost all privileges and assignments that she was afforded prior to giving birth to her first child in 2014.  Mr. Gray's comments and conduct reflect a clear consternation that Bonnie now has family care giving responsibilities.

25.     Bonnie has suffered incessant humiliation and embarrassment, and despite attempting to resolve this hostility through informal (Board of Directors) and formal (EEOC charge) means, she has now come to the realization that she will never again regain the respect and prestige that she once held in abundance.

## COUNT I – GENDER DISCRIMINATION (HOSTILE WORK ENVIRONMENT)
### In violation of Title VII of the Civil Rights Act of 1964

26.     Plaintiff incorporates the allegations contained in paragraphs 1 through 26 as if fully restated herein.

27.     Plaintiff was and continues to be subjected to an intimidating, hostile, and/or an offensive work environment emanating from Mr. Gray's comments and conduct following her return from maternity leave in 2014.

28.     The hostility in which Plaintiff has been subjected is based upon her female gender and Mr. Gray's stereotypical belief of a mother's role as a caregiver.

29.     The comments and conduct in which Plaintiff has been subjected are sufficiently severe or pervasive to alter the terms and conditions of her work environment from the perspective of an objective, reasonable person under similar circumstances.

30.     Plaintiff perceives the comments and conduct in which she has been, and continues to be subjected, as subjectively unwelcome and abusive.

31.     Plaintiff received a "Notice of Right to Sue" from the Equal Employment Opportunity Commission (EEOC) mailed June 12, 2017 (a copy of which is attached hereto and incorporated herein as Exhibit "A").  90 or fewer days have elapsed since Plaintiff's receipt of the "Notice of Right to Sue".

32.     As a direct and proximate result of Defendants' actions, Plaintiff has been unlawfully discriminated against by Defendants on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000(e) *et seq.*

33.     As a direct and proximate result of Defendants' conduct, Plaintiff has incurred lost fringe benefits, lost future earnings, lost future fringe benefits, and a damaged reputation.  Plaintiff has also suffered humiliation, embarrassment, loss of self esteem, mental pain and anguish, and severe emotional distress.

34.     As a direct result of Defendants' conduct, Plaintiff has been required to retain legal counsel to defend and protect her legal rights.

35.     Defendants' conduct was part of a pattern and practice of willful and unlawful creation of a hostile work environment.  Defendants' conduct was malicious and in reckless disregard of Plaintiff's rights.

## COUNT II – GENDER DISCRIMINATION (HOSTILE WORK ENVIRONMENT)
### In violation of the Ohio Civil Rights Act (O.R.C. § 4112.02 *et seq.*)

36.     Plaintiff incorporates the allegations contained in paragraphs 1 through 35 as if fully restated herein.

37.     Defendants' actions constitute intentional discrimination on the basis of gender within the meaning of O.R.C. § 4112.02 *et seq*.

38.     Plaintiff has been damaged in the manner articulated within COUNT I.

39.     Defendant is subject to a civil action for damages, injunctive relief, and all other appropriate relief under O.R.C. § 4112.99.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bonnie J. Rueber requests a trial by jury and prays for judgment against Defendants, jointly and severally, as follows:

1.     Full restitution, including all fringe benefits and lost incentives in an amount to be proven at trial;

2.     General compensatory damages with a figure exceeding $75,000, with the specific amount to be proven at trial by a jury;

3.     Special damages against both Defendants, in an amount to be proven at trial by a jury;

4.     Emotional distress damages against both Defendants, in an amount to be proven at trial by a jury;

5.   Award of reasonable attorney's fees in an amount to be determined by the Court pursuant to federal and Ohio common law;

6.   Punitive damages against both Defendants in an appropriate amount to be decided by a jury at trial;

7.   Reasonable costs of proceedings, pursuant to 28 U.S.C. § 1920 and Federal R. of Civ. P. (54), and Ohio R. Civ. P. 54(d), and any other authorizing statute or rule, federal or state, to be decided by a Court of law;

8.   Entitlement to prejudgment interest pursuant to both federal and Ohio law, to be determined by the Court and commencing from the time of the first instance of a hostile work environment, as established as a matter of law; and;

9.   Such other relief as this Court deems just and equitable.

Respectfully submitted,

*/s/ Jason E. Dawicke*

**JASON E. DAWICKE**
Supreme Court ID Number: 0073632
**Dawicke Law, LLC**
PO Box 21354
Columbus, Ohio 43221
**Telephone:**  614.477.7301
**Fax:**  888.858.3063
**E-mail:** jdawicke@dawickelaw.com

*Attorney for Plaintiff Bonnie J. Rueber*